**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert GRIMM, and Alburn Holder,
Defendants-Appellants.**

**No. 77–5390
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 2, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

**1137**

Theo D. Mann, Newnan, Ga. (Court-appointed), for Grimm.

Paul R. Koehler, Atlanta, Ga. (Court-appointed), for Holder.

William L. Harper, U. S. Atty., Dorothy Y. Kirkley, Atlanta, Ga., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM.

Holder and Grimm appeal their jury convictions of conspiracy to transport stolen cars in interstate commerce and to dispose of them in violation of 18 U.S.C. §§ 2312 and 2313. Holder also appeals from his convictions of seventeen counts of knowingly transporting stolen cars in interstate commerce in violation of 18 U.S.C. § 2312 and his convictions of six counts of knowingly receiving such stolen vehicles.

The pertinent facts with respect to this case are as follows. Holder operated a used car business in Georgia. From January 1, 1976, to August 1, 1976, Ray Morrow purchased for Holder 72 used cars from dealers in Ohio, Virginia, Maryland, and Michigan and transported them to Georgia. The cars were bought by sight drafts on the Bank of Carroll County where Grimm, who was a vice president, handled the drafts.

To induce the dealers to release the cars to Holder's agents in exchange for Holder's drafts, Grimm, upon inquiry, told some of the dealers that Holder was respectable, his drafts would be honored, he had a line of credit of approximately $300,000, and he

had an average balance of $50,000 in his account. Holder failed to pay the drafts held by Grimm. The drafts were held by Grimm for more than ten days before returning them to the sending bank. The proper banking procedure for these drafts was three to seven days.

The dealers learned that the drafts had been returned unpaid and upon inquiry they were told by either Grimm or Holder to resubmit the drafts for payments. The drafts were never paid. Holder sold most of the cars in Alabama and Georgia. He refused to give any cars back to the dealers.

Morrow, one of Holder's agents testified, contrary to the testimony of Holder and Grimm, that Holder told him he had no intentions of honoring the drafts and that he had Grimm where he wanted him because he paid Grimm $100 a draft. Morrow witnessed Holder pay Grimm $500 for handling five drafts.

On this appeal appellants raise three issues. They are: (1) error in excluding evidence favorable to the defendants; (2) insufficient evidence to sustain Grimm's conviction, and (3) error in denying Grimm's motion for severance. We find no reversible error.

■ Appellants first contend that the trial court abused its discretion by excluding as irrelevant seventy-five drafts for the purchase of other cars which were paid by Holder through the Bank of Carroll County. They argue that the drafts had substantial probative value. This contention is meritless. The trial judge has wide discretion as to relevance and materiality of evidence. Such rulings will not be disturbed on appeal absent a clear showing of an abuse of discretion. *United States v. Brown*, 547 F.2d 1264 (5th Cir. 1977). Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant. The drafts are simply cumulative of Holder's undisputed testimony that he had paid other drafts. The admission of the 75 drafts could have complicated the case and confused the jury. There was no abuse of discretion here. *See United States v. Stokes*, 506 F.2d 771 (5th Cir. 1975); *United*

*States v. Squella-Avendano*, 478 F.2d 433 (5th Cir. 1973).

■ The contention that the evidence is insufficient to support Grimm's conviction is refuted by the record. The record reveals that in order for Holder to dispose of the cars, it was necessary that the dealers not learn that the drafts would never be paid. By assuring the dealers that drafts would be paid and by holding the drafts a longer time than was customary, Grimm participated in stalling tactics to enable Holder to dispose of the automobiles. Morrow testified that Holder told him that he paid Grimm $100 a draft for helping him defraud the dealers. Morrow observed Holder pay Grimm $500 for five drafts. Although Grimm attacks Morrow's credibility on this appeal, the issue of credibility is for the jury to decide. *Walker v. United States*, 301 F.2d 94 (5th Cir. 1962). In viewing the evidence in the light most favorable to the government there was substantial evidence to support the verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Lastly, Grimm assigns error in the denial of his motion for a severance and in failure by the court to give limiting instructions on evidence which did not pertain to him as there were three other defendants who were charged with numerous counts. Grimm was charged only with one count. The severance is within the discretion of the trial court and its denial is not subject to reversal unless clear prejudice is shown. *United States v. Miller*, 513 F.2d 791 (5th Cir. 1975). There is no showing of prejudice to the defendant on account of the joint trial. There was no conflict in the defenses. *See, United States v. Perez*, 489 F.2d 51 (5th Cir. 1973), *cert. denied* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). Moreover, a joint trial is usually appropriate in conspiracy cases.

■ Grimm's motion for severance was denied by the United States Magistrate and Grimm never renewed it during the trial. Nor did Grimm ever request instructions on the admissibility of evidence which did not

pertain to him. It was not error for the court to omit limiting instructions if not requested to give them.

AFFIRMED.