**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Milton WASMAN, Defendant-Appellant.**

**No. 79–5643.**

United States Court of Appeals, Fifth Circuit. Unit B

April 2, 1981.

See also, D.C., 484 F.Supp. 54.

Richard M. Gale, Miami, Fla., for defendant-appellant.

Kevin M. Moore, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

Milton R. Wasman was convicted by a jury in the United States District Court for the Southern District of Florida for "willfully and knowingly" making a false statement in an application for a United States passport in violation of 18 U.S.C. § 1542.[1]

---

1.  18 U.S.C. § 1542 provides as follows:

    False statement in application and use of passport

    Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or

    Whoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement—

On appeal Wasman contends that the trial court erred in rejecting evidence that he had legally assumed a non-semitic name to use in business dealings with Arab investors. We agree and reverse because of the erroneous exclusion of this evidence which deprived defendant of a valid defense.[2]

On March 1, 1978 Milton Wasman submitted an application for a United States passport to a passport agent in Miami, Florida. Wasman applied for the passport in the name of David Hibbert Hendrick, Jr., an old classmate of Wasman's from law school at the University of Miami, who had died in 1961.[3] Wasman presented two recent photographs of himself. At the time the application was made, the defendant informed the passport agent that he had forgotten his wallet. He introduced his secretary, Barbara Bucci, who could identify him. Bucci gave an affidavit identifying Wasman as Hendrick. The passport was issued and subsequently used by Wasman, travelling as Hendrick.

> Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. *See United States v. Cox*, 593 F.2d 46 (6th Cir.1979). The court ruled that under state law the defendant Cox had legally adopted the name used on his passport application; therefore he could not be convicted under 18 U.S.C. § 1542. Cox had assumed the name of Stein in furtherance of his interest in establishing a business of making hand tooled leather bags. He wanted to erase the stigma of a felony conviction seven years earlier for grand larceny. In addition to acquiring the passport in the name of Stein, defendant had obtained a new driver's license, social security card and had established credit at one or more financial institutions. Under the applicable state law a person could adopt any name he wished without resort to court action. The sixth circuit found that there was "no showing that the defendant assumed the name Stein for fraudulent purposes." 593 F.2d at 48.

3. Wasman also supplied Hendrick's date and place of birth. The falsity of his statements in that connection is not controlled by our holding with respect to his claim that he lawfully assumed Hendrick's name. Additional false statements, however, do not deprive him of the right to defend in connection with his statement as to his name.

4. The view of the trial judge is reflected by the following extract from the transcript of the argument on the motion:

Wasman readily concedes that he applied for the passport in the Hendrick name. He disputes that in doing so he made a false statement. He correctly argues that under both common law and the law of Florida a person may adopt any name he wishes without any legal proceedings provided it is not done for fraudulent purposes. *In re Adoption of Long*, 56 So.2d 450 (Fla.1952). His argument is patterned after the holding of the sixth circuit in *United States v. Cox*, 593 F.2d 46 (6th Cir.1979) that section 1542 is not violated by a person who states a legally adopted name on a passport application, even if such adoption of name was without resort to any court. The government concedes that there was no illicit purpose connected with Wasman's assumption of the name Hendrick. In formulating the ruling now before us, however, the trial judge seems to have been influenced by his stated disapproval of Wasman's use of a non-semitic name in dealing with Arabs.[4]

MR. RUSS: As I have outlined in the chart, the method of adopting another name can be done, of course, through judicial action or judicial proceedings under the statutes which provide for the change of name. It also can be done under the common law method of assuming another name, if it's done without any fraudulent purpose. And we submit that the defense of this case is based upon the assumption of another name without any fraudulent purpose.

THE COURT: Let me ask you this: Is duping Arabs fair game? I mean, we may not like them because they have jacked up the price of oil on America but I mean, is it a non-fraudulent purpose to try to dupe Arabs, but a fraudulent purpose to try to dupe non-Arabs?

MR. RUSS: No, there is no distinction between whomever the person is that's being duped.

THE COURT: I mean, that certainly cannot be valid, no matter how unhappy we might be about OPEC.

MR. RUSS: I don't accept the description of the conduct as being quote that of duping Arabs close quote.

THE COURT: Well, however reprehensible bigotry may be, in my lexicon, flying under false colors is duping, or flying false colors, I should say, is trying to dupe somebody, whether it is an armed merchant raider on the high seas, or whether it's trying to mislead somebody as to your identity in a business transaction. Maybe I have a somewhat

In a one-count indictment Wasman was charged with making a false statement in an application for a passport in violation of 18 U.S.C. § 1542. At trial the government introduced evidence that Wasman had not used his correct name or birth certificate in obtaining a passport in the name of Hendrick.[5] After the government rested, it moved to limit defense evidence that it anticipated on the basis of defendant's opening statement,[6] and Rules 401, 402 and 403 of the Federal Rules of Evidence.

Wasman's attorney made clear to the trial judge that he sought to offer evidence that there was no bad purpose involved in his assuming another name for business reasons. An extensive offer of proof was made outside the presence of the jury. According to the proffer Wasman would testify that he had been involved in a business relationship with Ronnie Comninos since the early 1970's in the development of a tract of land in central Florida called "Traders Cove." Wasman's role was to oversee development activities; Comninos acted as a European broker who solicited money from European investors. As a result of business reversals in the project in the fall of 1977 animosity developed between Wasman and Comninos resulting in litigation. In the latter part of 1977 and early part of 1978 Wasman communicated with Comninos and subsequently arranged a meeting in London in mid-February of 1978. Wasman travelled to London to meet with Comninos and Andrew Connolly, who represented himself as an agent for a group of wealthy Arabs seeking to invest in Florida land. The three men discussed the possibility of Wasman becoming an agent for Connolly in Florida. Connolly pointed out that Wasman's semitic last name would be a detriment in dealing with Arab principals and that Wasman should adopt a non-semitic-sounding name.

After Wasman met with the two men in London, he returned to Miami and began contacting corporations and agencies who had large tracts of land for sale in Florida. Additionally, Wasman obtained a passport in the name of his former classmate Hendrick, with the help of Ms. Bucci, who was told of the necessity of using a non-semitic name.

Defense counsel's proffer also included testimony by Wasman as to events which occurred subsequent to the issuance of the passport. On the 4th or 5th of March 1978 he travelled to London where he met Comninos and Connolly and, under the name Hendrick, gave a presentation to some Arabs. After the presentation Connolly told him that it would be necessary for Wasman, Connolly and a third man to travel to southern Spain to meet with an Arab sheik. When Wasman travelled to the sheik's home near Marbella, Spain, he was told by Connolly that he was being kidnapped. Connolly made a ransom demand on behalf of some Italian clients who wanted over half a million dollars because of problems with a Florida land transaction. Wasman agreed to the demands of Connolly and was released. He eventually made his way back to Miami and reported the matter to the FBI.

In addition to the proffer of Wasman's testimony, defense counsel stated that he would introduce several exhibits to substantiate the trips made by Wasman to London and Spain as well as pictures of bruises and lacerations incurred by Wasman during his ordeal. He also stated that he would call

unsophisticated Midwestern code of ethics. So be it. I do.

5. The government's case included testimony of the agent in charge of the Miami passport agency, who testified concerning application procedures and identified the Hendrick application papers as well as a passport issued to Wasman in 1974; a passport agent at the Miami office who received the Hendrick application together with photographs and a passport; a registrar at the University of Miami, who

identified transcripts of Wasman and Hendrick that showed they were enrolled together in two classes in law school; a forensic photography expert with the FBI and a fingerprint specialist.

6. Defense counsel's opening statement essentially contained the evidence proffered to the court concerning Wasman's business relationship with Comninos and his trip to England and subsequently Spain with Connolly.

several witnesses, including Comninos, a private detective hired to identify and find Connolly, the security officer of the London hotel in which Wasman stayed, and the FBI agent assigned to the case.

Following a lengthy discussion, the trial judge granted the government's motion.[7]

Defense counsel subsequently requested clarification of the court's ruling, inquiring as to whether all the proffered evidence was excluded. When the trial judge answered in the affirmative, the defense rested and renewed a prior motion for acquittal under Rule 29. Thereafter, the jury was brought into the courtroom and advised that the matters contained in the defendant's opening statement would be excluded.

After the court's explanation, the jury was excused to allow the attorneys to discuss the proposed jury instructions. The court indicated that it would stick with 9A of the Pattern Jury Instructions on the definition of willfully.[8] Following the conference, the jury returned, closing arguments were made and the judge charged the jury. During the course of jury deliberation, the jury requested the judge to define the word "willfully." Over objection of defense counsel the trial judge gave a supplemental jury instruction that differed from the original jury charge on the definition of willfulness.[9] On appeal, defendant contends that the district judge committed reversible error in its supplemental jury instruction. Because we find that the trial court committed reversible error in excluding the proffered evidence, we do not reach this issue.

■ In concluding that reversible error was committed in the exclusion of the proffered evidence, we recognize that the trial court is vested with wide discretion in determining whether evidence is relevant. *United States v. 110 Bars of Silver, 3 Crucibles of Silver, 11 Bags of Silver Coins*, 508 F.2d 799, 802 (5th Cir.), *cert. denied*, 423 U.S. 861, 98 S.Ct. 118, 46 L.Ed.2d 89 (1975). Such discretion does not extend to the exclusion of crucial relevant evidence necessary to establish a valid defense. *United States v. Riley*, 550 F.2d 233, 236 (5th Cir. 1977). An appellate court will not reverse, however, unless an abuse of that discretion is demonstrated. *United States v. Johnson*, 585 F.2d 119, 125 (5th Cir.1978).

■ The trial judge correctly instructed the jury that Wasman must have had the specific intent to do something that the law forbids, in this case misstating his name. The trial judge apparently viewed the proffered evidence as going only to motive and ruled that good motive alone is never a defense. In this situation, however, Wasman's contention does not merely relate to motive. Rather, it deals with whether the statement of his name was or was not false. Wasman says that the statement of his name was not false because he had legally assumed the name which he stated. He sought to show the circumstances involved in his assumption of a new name in undertaking to disprove its falsity. We do not perceive wherein the testimony concerning the rather bizarre kidnapping episode has any relevance whatever. It is equally clear that evidence concerning his purpose in assuming another name and the circumstances surrounding his doing so are relevant to the central contention of his defense. *Cf. United States v. Cox.* Whether the factual issue would have been resolved in his favor, he was certainly entitled to have his testimony on this point heard by the jury.

■ When "proffered evidence is of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility." *United States v. Holt*, 342 F.2d 163, 166 (5th Cir. 1965). Because the trial court committed a

---

7. The district court's order denying a motion for new trial is published at 484 F.Supp. 54.

8. The jury charge on willfully, found in Pattern Jury Instruction 9A, defines willfully as the act was "committed voluntarily and purposely with the specific intent to do something the law

forbids; that is to say, with bad purpose either to disobey or disregard the law."

9. The supplemental charge omitted the phrase with "bad purpose either to disobey or disregard the law."

clear abuse of discretion in its ruling the judgment of conviction must be reversed and the case remanded for a new trial.

REVERSED and REMANDED.