UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael K. TEREBECKI,
Defendant-Appellant.

No. 81–7790.

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1982.

provisions constitute the same offense. 351 F.2d at 245 n. 6. We set forth and apply the *Blockburger* test immediately *infra.*

Fawal & Spina, Benjamin Daniel, Joseph A. Fawal, Birmingham, Ala., for defendant-appellant.

Holly L. Wiseman, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Appeal from the United States District Court for the Northern District of Alabama.

Before HILL and HENDERSON, Circuit Judges, and GARZA*, Senior Circuit Judge.

GARZA, Circuit Judge:

Michael Terebecki, defendant-appellant, was charged with aiding and abetting James Dennis in the commission of wire fraud in violation of 18 U.S.C. § 1343[1] and 18 U.S.C. § 2. Terebecki and Dennis were tried and convicted but Terebecki's conviction was overturned, due to prejudicial joinder, in *United States v. Dennis*, 645 F.2d 517 (5th Cir.1981). Terebecki was retried and convicted. He appeals raising three issues: (1) Whether the trial court erred in allowing the admission of evidence regarding the defendant's participation in a questionable business transaction some fifteen months after the charged fraud; (2) Whether the trial court erred in excluding evidence concerning an earlier transaction between Itel Capital Corporation (the defrauded party) and Herman Mulvehill (a party not related to the fraud) which the defendant claims would have supported its defense theory; and (3) Whether the trial court erred in denying defendant's requested jury charge on intent.

In June, 1978, Itel Capital Corporation, hereafter Itel, was engaged in the business of equipment leasing. Itel operated an investment pool, receiving capital from equity investors to finance the purchase of equipment which was subsequently leased out. Equity investors received a substantial tax benefit from the arrangement, and Itel received a commission for its services. John Adams represented Itel in Alabama and in the transaction in controversy.

Dennis was an Alabama businessman who had dealt with Itel on several occasions. Terebecki was a Birmingham real estate agent. Dennis and Terebecki were neighbors, and Terebecki had represented Dennis in the sale of houses and equipment.

In June of 1978, Dennis contacted Adams proposing that Itel purchase an oil processing plant from an estate and lease it to Dennis. A potential transaction form was completed and sent to Itel's San Francisco office for approval. On September 29, 1978, Dennis met with Adams and told him the attorney for the estate would attend the meeting in order to execute the necessary documents to transfer title to Itel. Terebecki arrived at the meeting and executed a bill of sale for an oil processing

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The indictment under which Terebecki was charged alleged he had violated 18 U.S.C. § 1341. The indictment, however, set forth a violation of the elements of 18 U.S.C. § 1343 and the proof complied with indictment. Since Terebecki has not objected to this typographical error, any objection is waived. *See, Government of the Canal Zone v. Green*, 521 F.2d 241, 242 (5th Cir.1975); Fed.R.Crim.P. 12(f).

plant in his own name. The $285,000 purchase price was wired from Itel's bank to Terebecki's bank account. Terebecki subsequently gave Dennis a cashier's check for $275,000, retaining $10,000 for himself.

In December, 1978, Itel became concerned about the transaction and began an investigation. The investigation revealed that there was no oil processing plant at the address on the bill of sale. It, also, revealed that Dennis and/or Terebecki never had title to an oil processing plant.

The defense theory was that Terebecki acted as a "strawman" to assist Dennis and did not intend to defraud Itel. This theory was supported by Dennis who testified: he intended to buy an oil processing plant, sell it to Itel and lease it back; Itel knew he was the one selling the plant; Adams told him that for tax reasons Itel could not lease the property to the same party it bought the property from; he enlisted Terebecki to serve as a "strawman" to meet Itel's requirement; and Itel knew Dennis did not own the oil plant at the time Terebecki signed the bill of sale.

Note that Adams and Steinmeyer, an Itel vice president, denied that Itel had a policy precluding it from leasing to the same party it purchased from.

To support his defense of lack of fraudulent intent, Terebecki introduced evidence of legitimate business dealings he had with Dennis. To rebut this evidence, the government introduced evidence of a business deal, fifteen months after the charged offense, in which Terebecki assisted Dennis. Carlton Foster, an officer of C & F Oil Co., testified that a man calling himself "Mike Anthony" contacted Foster to set up a meeting between Foster, "Anthony" and a "Bill Gentry." At this meeting "Gentry" arranged to purchase a large amount of fuel from C & F Oil Co. Foster identified "Anthony" as Terebecki and "Gentry" as Dennis. C & F Oil Co. subsequently filed a civil suit to recoup its losses in the deal, and criminal charges were brought against Dennis. Both actions, however, were subsequently dismissed.

Terebecki contends the trial court erred in admitting evidence of the extrinsic offense.[2] Rule 404(b) of the Federal Rules of Evidence[3] controls the admissibility of extrinsic offenses. In *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978), (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the test for admissibility was set forth.[4] The test raises two questions: (1) Is the evidence relevant to an issue other than the defendant's character; and (2) Does the evidence possess probative value that is not substantially outweighed by its undue prejudice.[5] *Id.* at 911.

The first inquiry, therefore, is whether Foster's testimony was relevant. When the extrinsic offense is offered to show the defendant's intent was to commit the offense charged, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Id.* at 911. Here, Terebecki indulges himself in the same state of mind in both the charged and the extrinsic offense. In the charged offense Terebecki posed as an attorney and made false representations to assist Dennis in a fraudulent business arrangement. In the extrinsic offense, Terebecki posed as

---

2. When discussing the admissibility of extrinsic conduct, "offense" includes non-criminal activity that "impugns the defendant's character." *United States v. Beechum*, 582 F.2d 898, 914 n. 17 (5th Cir.1978), (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The defendant's use of an alias in a questionable business deal certainly impugns his character.

3. Fed.R.Evid. 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as a proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

4. The old test of *United States v. Broadway*, 477 F.2d 991, 995 (5th Cir.1973), was specifically overruled in *United States v. Beechum, supra*, at 910.

5. All factors in Rule 403, not just undue prejudice, can be weighed against probative value.

"Mike Anthony" and falsely represented Dennis to be "Gentry" in order to assist Dennis in a questionable business venture.

Terebecki contends the extrinsic offense is not relevant because there was an insufficient basis for the jury to find Terebecki committed the extrinsic offense. In assessing relevance, the trial judge must "determine whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense." [6] *Id.* at 913. *See* Fed.R.Evid. 104(b). The uncontroverted testimony of Foster was sufficient proof for the jury to find the extrinsic proof occurred. The district court, consequently, was correct in finding the evidence relevant.

Since the relevance of the testimony has been established, it must be determined whether the probative value of the evidence is substantially outweighed by its undue prejudice. In this probe, no formula can be applied; a common sense approach must be taken. *United States v. Beechum, supra,* at 914. "In measuring probative value . . ., the judge should consider the overall similarity of the extrinsic offense and the charged offense." *Id.* at 915. Here, as discussed earlier, the extrinsic offense was very analogous to the charged offense. Thus, the evidence does have probative value.

Terebecki points out the extrinsic offense was committed fifteen months after the charged offense and asserts that the remoteness of the extrinsic offense negates its probative value. Terebecki is correct in contending the more remote the extrinsic offense the less probative it is. *Id.* at 915. The trial court, however, has broad discretion in determining if an extrinsic offense is too remote to be probative. *E.g., United States v. Stein,* 437 F.2d 775, 780 (7th Cir.1971); *Hale v. United States,* 406 F.2d 476, 480 (10th Cir.1969); *Mitchell v. United States,* 213 F.2d 951, 958 (10th Cir. 1954), *cert. denied,* 348 U.S. 912, 75 S.Ct. 291, 99 L.Ed. 715 (1955). The trial judge did not abuse his discretion in admitting the extrinsic offense. Extrinsic offenses more remote than fifteen months have been held properly admitted.[7] *United States v. Hitsman,* 604 F.2d 443, 448 (5th Cir.1979); *United States v. Pauldino,* 443 F.2d 1108, 1114 (10th Cir.1971), *cert. denied, Bridwell v. United States,* 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163 (1971); *Fisher v. United States,* 231 F.2d 99, 103 (9th Cir.1956).

Remoteness must be looked at in light of the similarity between the charged and the extrinsic offense. Terebecki's conduct in the extrinsic offense was very similar to his conduct in the charged offense. The probative value of the extrinsic offense, therefore, was not so reduced by its remoteness as to render the trial court's admission of the evidence an abuse of discretion.

---

**6.** Under the old standard of *United States v. Broadway supra,* at 995, an extrinsic offense was not admissible unless the elements of the extrinsic offense were established by plain, clear and conclusive evidence.

**7.** Terebecki cited several cases in his brief in support of his position. These cases, however, are not controlling.

In *United States v. Jimenez,* 613 F.2d 1373, 1376 (5th Cir.1980), the court mentioned that remoteness had depleted the relevance of the extrinsic offense. The holding, however, was based on its finding that "no reasonable jury could have found appellant guilty of the" extrinsic offense.

In *United States v. Byers,* 600 F.2d 1130, 1133 (5th Cir.1979), the court found a prior conviction for possession of marihuana, an unspecified amount of time before the charged offense, was probative and properly admitted.

In *United States v. Daniels,* 572 F.2d 535, 538 (5th Cir.1978), the exclusion of an extrinsic offense was based on the extrinsic offense being unrelated to the charged offense. The decision was not based on remoteness.

The facts and the holding of *United States v. Turquitt,* 557 F.2d 464 (5th Cir.1977), support Terebecki's position. The case, however, is not controlling. The court relied on the rationale of *United States v. Broadway, supra,* which was specifically overruled by *United States v. Beechum, supra,* at 910. The two tests for admissibility of extrinsic offenses are significantly different; the *Broadway* test asks whether the probative value overcomes the prejudice while the *Beechum* test asks whether the prejudice substantially outweighs the probative value.

At trial Terebecki attempted to introduce the testimony of Herman Mulvehill and Ralph Henson. According to the proffer made by defense counsel, both witnesses would have testified that, one week before Terebecki signed the bill of sale, Mulvehill proposed to sell a piece of equipment to Itel and lease the same equipment back. Adams told Mulvehill, however, that Itel required a third party in the transaction. Henson was brought in as a strawman. Mulvehill conveyed the property to Henson, who conveyed it to Itel, who leased it to Mulvehill. The testimony was offered to impeach Adams' testimony that Itel did not require a third party in the transaction and to support the defense theory. The district court excluded the testimony under Fed.R.Evid. 403.

Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial court has broad discretion in determining the admissibility of evidence, and its ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir.1978). The trial judge did not abuse its discretion by excluding evidence of the Mulvehill-Itel transaction.

Terebecki contends that the heart of his defense is that he had no knowledge of any impropriety in the transaction and had no criminal intent. He argues that the evidence of the Mulvehill-Itel transaction would have gone directly to the issue of intent; that he could not have intended to defraud Adams if Adams knew he had no actual title to transfer, especially if, as Dennis testified, Terebecki believed Dennis owned the equipment.

Terebecki's argument is based on several fictions. First, the argument is based on the premise that the Mulvehill-Itel transaction proves that Adams knew Terebecki had no actual title to transfer. This premise is incorrect; the Mulvehill-Itel transaction would actually prove Adams believed Terebecki had actual title to transfer. Mulvehill actually transferred title to Henson so Henson would have title to transfer to Itel. Consequently, if Adams believed Terebecki would act as Henson had done, he would believe Terebecki had obtained title before executing the bill of sale.

Second, Terebecki's argument is based on the premise that Adams was defrauded. Adams was not defrauded; Itel was defrauded. Two Hundred Eighty-Five Thousand Dollars was wired to Terebecki's bank account from Itel's bank account, not Adams' bank account. Terebecki purported to convey the non-existent oil plant to Itel and not to Adams.

Finally, assuming for the sake of argument the evidence proved Adams knew Terebecki did not have title, the evidence does not exculpate Terebecki. If Adams knew neither Terebecki nor Dennis owned the oil plant, two possible conclusions can be reached about Adams' conduct: (1) he was grossly negligent in protecting Itel's interest; or (2) he was acting in accord with Dennis to defraud Itel. Neither of these conclusions support Terebecki's contention that he had no fraudulent intent. Surely, a party acting to defraud a company is not exculpated by evidence the defendant found an incompetent company employee to manipulate or a corrupt employee to conspire with.[8] Furthermore, evidence of Adams' improper behavior could easily complicate the issues in the case and confuse the jury. The trial judge, therefore, did not abuse his discretion in excluding this non-relevant evidence which could confuse and mislead the jury.[9] *See United States v. Bowe*, 360 F.2d 1, 15 (2d Cir.1966).

---

8. If it was proved that Adams was working with Dennis to defraud Itel, this would not prove or even lead to the inference that Terebecki did not intend to defraud Itel.

9. Even if the Mulvehill-Itel transaction was relevant, the prejudice to Terebecki in excluding the testimony would be slight. Dennis testified Adams knew Dennis did not have title, and this is what Terebecki intended to prove through the evidence.

Terebecki also offered the testimony of Henson and Mulvehill to impeach Adams' statement at trial that Itel did not require a third party in the transaction. Since the statement did not concern a major issue in the case, impeachment would have been on a collateral issue and was properly excluded. *United States v. Hawkins*, 661 F.2d 436, 444 (5th Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982).

Finally, Terebecki contends the trial court erred in refusing to submit three requested charges to the jury:

Defendant's Requested Charge 20:

I charge you that if you find from the evidence that Itel Capital Corporation knew that the defendant was not the owner of the oil plant referred to in this case, then you must acquit the defendant.

Defendant's Requested Charge 21:

Knowledge by a corporation is gained in the conduct of its affairs by its agents and employees. Therefore, if you find from the evidence that Itel Capital Corporation knew that Michael Terebecki did not own or have the authority to sell the oil plant referred to in this case then you must acquit the defendant.

Defendant's Requested Charge 22:

If you find from the evidence that Itel Capital Corporation parted with its money for some other reason than the representation made by defendant Michael Terebecki then you must acquit him.

The defendant is entitled to have the court instruct the jury on the defense theory, "assuming that the theory has foundation in the evidence and legal support." *United States v. Conroy*, 589 F.2d 1258, 1273 (5th Cir.1979). The trial court properly excluded requested charges 20, 21 and 22 because they were not supported by the law and evidence.[10] The charge given by the district court sufficiently covered the legal and evidentiary issues in the case and was proper.

As Terebecki's three points of error are without merit, the judgment of the trial court is affirmed.

AFFIRMED.

JAMES C. HILL, Circuit Judge, dissenting:

While I agree with the majority's disposition of the other issues presented in this appeal, I cannot concur in the majority's treatment of the trial court's alleged error in excluding evidence regarding the Mulvehill-Itel transaction. Unquestionably, the trial court possesses broad discretion in determining the relevancy and materiality of evidence. *United States v. Gorel*, 622 F.2d 100 (5th Cir.1979); *United States v. Grimm*, 568 F.2d 1136 (5th Cir.1978). The trial court, however, abused its discretion in excluding Terebecki's proffered evidence. Terebecki offered the evidence in an attempt to show that he did not possess the requisite intent to defraud Itel. He contends that the transaction between Mulvehill, Henson and Adams, who again was acting as Itel's representative, is probative of Terebecki's good faith belief that he was acting as a strawman in order to facilitate the deal between Dennis and Itel.

This proffered testimony certainly relates to the defense's theory regarding Terebecki's intent. The trial judge's discretion "does not extend to the exclusion of crucial relevant evidence establishing a valid defense." *United States v. Wasman*, 641 F.2d 326, 329 (5th Cir.1981); *United States v. Riley*, 550 F.2d 233, 236 (5th Cir.1977). "When proffered evidence is of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility." *United States v. Wasman*, 641 F.2d at 329 (quoting *United States v. Holt*, 342 F.2d 163, 166 (5th Cir. 1965)).

The majority errs, I believe, in viewing the testimony regarding the Mulvehill-Itel

---

10. As to requested charges 20 and 21, the evidence does not support a finding that Itel knew Terebecki did not own the property. Even if it did, as demonstrated above, that fact alone is not sufficient to exculpate Terebecki. As to requested charge 22, there is no evidence to support a finding that Itel parted with the money for any reason other than the representations made by Terebecki.

transaction too narrowly. Terebecki does not argue that he possessed actual title to the oil processing plant nor does he base his argument on lack of intent to defraud Adams. Terebecki contends that he lacked the requisite intent to defraud Itel since Adams, Itel's representative, told him that Itel needed a strawman in order to consumate the deal with Dennis. Mulvehill's and Henson's testimony would support the defendant's assertion that he had been told that Itel could consummate the deal with Dennis only through a strawman. Terebecki would have the jury believe that he merely wanted to facilitate the deal. Without the testimony of Mulvehill and Henson, Terebecki was forced to rely on the testimony of a man who had been convicted of defrauding Itel in the same transaction to prove the central contention of his defense. Terebecki's defense may or may not be reasonable to a jury. *See United States v. Wasman,* 641 F.2d 326 (5th Cir.1981); *United States v. Riley,* 550 F.2d 233 (5th Cir.1977). Whether or not the factual issue would have been resolved in his favor, I believe the trial court should have at least allowed Terebecki to present Mulvehill's and Dennis' testimony as relevant evidence. Accordingly, I would reverse and remand for a new trial.