**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**John Dillard O'BRYANT,**
**Defendant-Appellant.**

**No. 84–3640.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1985.

Michael L. Pritzker, Chicago, Ill., for defendant-appellant.

Karla R. Spaulding, Tampa, Fla., Ernst D. Mueller, Jacksonville, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

John O'Bryant was convicted on three counts of making a false statement in applications for passports. 18 U.S.C. § 1542. O'Bryant challenges his conviction on four grounds: first, that the indictment against him should have been dismissed because of the government's failure to prosecute him within the time limits set out in the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.;* second, that the trial court improperly failed to suppress the fruits of a warrantless search; third, that the court improperly rejected several of his requested jury instructions; and finally that the court inadequately polled the jury. We conclude that the court committed no reversible error and affirm O'Bryant's conviction.

## I. BACKGROUND

On July 2, 1982, Hallandale police officer Ted Crespi, while on routine parole, spied a briefcase next to an overflowing trash dumpster. Officer Crespi unlatched the briefcase and examined its contents. He found numerous pieces of identification inside. Crespi turned the briefcase over to Detective Negreria who, after examining the contents, turned the briefcase over to the Drug Enforcement Administration (DEA).

The briefcase contained two passports and passport applications in the name of John Dillard O'Bryant as well as passports in the names of George Allan Williams and George Edwin Cuenca. All of the passports bore O'Bryant's photograph. The briefcase also contained birth certificates, drivers' licenses and other identification documents in various names.

## II. THE SPEEDY TRIAL ACT

18 U.S.C. § 3161 provides a seventy day period from the date of the information or indictment or the date on which the defendant appeared before a judicial officer of the court where charges are pending, whichever last occurs, and the commencement of the trial. 18 U.S.C. § 3161(c)(1). Failure of the government to bring the defendant to trial within the seventy day period results in dismissal of the case. 18 U.S.C. § 3162(a)(2). Under section 3161(h), however, certain periods of delay are excludable when calculating the time limit:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—[certain specified proceedings].

18 U.S.C. § 3161(h).[1]

Appellant contends that the time span between his indictment and trial exceeded the allowable seventy days and therefore the charges against him must be dismissed in accordance with section 3162(a)(2). In order to properly compute the time involved, the sequence of events must be reviewed.

September 15, 1982—O'Bryant indicted in the Middle District of Florida on three counts of making a false statement in a passport application and an arrest warrant issued the next day.

May 12, 1983—O'Bryant arrested in Maryland for misdemeanor boating violations and held on state bond.

May 13, 1983—O'Bryant brought before a federal magistrate in Baltimore who set $1,000,000 bond and remanded O'Bryant to state officials. Detainer notice filed by federal marshals.[2]

August 17, 1983—O'Bryant tried and convicted on state charges. State court set appeal bond in same amount as trial bail bond.

December 20, 1983—State charges against O'Bryant dismissed on appeal.

March 15, 1984—O'Bryant brought before a magistrate in Florida. Arraignment continued until March 21, 1984 to enable O'Bryant's attorney to be present.

March 21, 1984—O'Bryant arraigned, and defense counsel moved for discovery; hearings on discovery motion set for April 13, 1984.

March 28, 1984—Government filed notice of speedy trial considerations. Next day O'Bryant moved for reduction of bond.

April 6, 1984—Trial court ordered O'Bryant to respond to the government's notice of speedy trial considerations by April 13.

---

1. Examples of "other proceedings" listed in § 3161(h)(1) are:

(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

(B) delay resulting from any proceeding, including any examination of the defendant, pursuant to section 2902 of title 28, United States Code;

(C) delay resulting from deferral of prosecution pursuant to section 2902 of title 28, United States Code;

(D) delay resulting from trial with respect to other charges against the defendant;

(E) delay resulting from any interlocutory appeal;

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

(G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

(H) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

(I) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

2. There is some confusion as to when O'Bryant first appeared before a federal magistrate in Maryland. The docket sheet indicates that O'Bryant's federal arrest warrant was executed on June 14, 1983. An order in which the original Florida district court judge recused himself from this matter confirms this date and states that O'Bryant appeared before a federal magistrate in Maryland on June 15, 1983 where bail was set and the government filed a notice of detainer. Appellant maintains, however, and the district court found, that O'Bryant's federal bail was set on May 13, 1983. Moreover, the district court found that the government filed a notice of detainer with Maryland at that time. Our analysis is not affected by these discrepancies.

O'Bryant asserts that he could have posted the state bail bond and obtained his freedom were it not for the bond set by the federal magistrate in Maryland. There is nothing, however, in the record of this case or oral argument that reveals the amount of the state bond or suggests that O'Bryant attempted to post it.

April 16, 1984—O'Bryant filed motions to dismiss the indictment and suppress evidence. Government filed motion to revoke defense counsel's pro hac vice admission for failure to abide by April 13 filing date set by court.

April 17, 1984—O'Bryant's counsel failed to appear at status conference. New status conference scheduled for April 30, and subsequently rescheduled for May 18 to accommodate O'Bryant's attorney.

May 17, 1984—O'Bryant's attorney filed motion to continue May 18 status conference. Status conference finally held on May 31, 1984 and trial date set for June 18, 1984.

June 8, 1984—O'Bryant moved to continue trial date; motion granted on June 14. Trial date set for July 2, 1984.

June 11, 1984—Court order deferred ruling on O'Bryant's motion to suppress until the conclusion of the government's case-in-chief.

June 19, 1984—O'Bryant's motion to dismiss for violations of Speedy Trial Act denied.

■ Although O'Bryant was indicted in September of 1982, he was not brought before a judicial officer of the Middle District of Florida until March 15, 1984. At that time the arraignment proceedings were continued until March 21, 1984, to enable O'Bryant's attorney to attend the proceedings. O'Bryant argues that the seventy day time period should have begun running from May 13, 1983, when he was brought before a United States magistrate in Maryland. On its face, however, the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) provides otherwise. That section specifically indicates that the seventy day period

does not begin until an indictment is filed or a defendant "appear[s] before a judicial officer of the court in which [the charge against the defendant] is pending, whichever date last occurs." Case law and the legislative history of the Act also indicate that, where an indictment has been filed, the seventy day clock does not begin running until a defendant has appeared in the court where the charges are pending. *United States v. Wilson*, 720 F.2d 608, 609 (9th Cir.1983) (quoting Judicial Conference of the United States, Committee on the Administration of the Criminal Law, *Guidelines to the Administration of the Speedy Trial Act of 1974, as amended*), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984); *see also* H.R.Rep. No. 1508, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 7401, 7423 (purpose of section 3161(c) is to fix a logical point from which to begin time limits).[3] Therefore, in the instant case, the seventy day time period did not begin running until O'Bryant appeared in the Middle District of Florida on March 21, 1984. *See United States v. Daly*, 716 F.2d 1499, 1504–05 (9th Cir.1983) (Speedy Trial Act's prohibition on commencing trials less than thirty days from arraignment is calculated from the time defendant first appears through counsel), *cert. dismissed*, 465 U.S. 1075, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984).

■ We must next determine whether O'Bryant's trial commenced within seventy days after his March 21, 1984 appearance. Although the trial began on July 2, 1984, section 3161(h) of the Speedy Trial Act excludes certain periods of delay. Section 3161(h)(1)(F) excludes "delay resulting from any pretrial motion, from the filing of

---

**3.** Where an indictment has previously issued, Congress clearly intended that the Speedy Trial Act clock would not begin running until a defendant appeared before a judicial officer in the district where charges were pending. The original Mikva and Ervin bills would have started the trial clock from the time of arrest. H.R. 7107, 92nd Cong., 1st Sess. 2 (1971); S.895, 92nd Cong., 1st Sess. (1971). When the Ervin bill was reported out of a Senate subcommittee, a provision had been added directing "an appropriate judicial officer ... [to] set a day certain for

trial." S.754, 93rd Cong., 1st Sess. 2 (1973). The 1974 House subcommittee and committee bills added the language starting the clock from where a defendant "has appeared before a judicial officer of the court in which such charge is pending." H.R.17409, 93rd Cong., 2d Sess. 3 (1974). This language was retained when the bill was enacted. Pub.L. 93–619, 93rd Cong. § 3161(c), 88 Stat. 2076, 2077 (1975); *see generally*, Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* (Fed.Judicial Center 1980).

the motion through the conclusion of a hearing on, or other prompt disposition, of such motion." ` Delay attributed to continuances also is excludable. 18 U.S.C. § 3161(h)(8)(A). At the March 21, 1984, arraignment, O'Bryant made oral discovery motions. On April 16, O'Bryant entered written motions to suppress evidence and dismiss the indictment. The motion to dismiss was denied on June 19, 1984, and the motion to suppress evidence was deferred until the close of the government's case-in-chief.[4] Throughout this period, O'Bryant had motions pending for continuances of pretrial conferences and trial dates. Accordingly, we agree with the district court that O'Bryant's pretrial motions effectively tolled the provisions of the Speedy Trial Act until his trial commenced on July 2, 1984. Therefore, O'Bryant's contention that his Speedy Trial rights under section 3161(c) were violated is without merit.

■ Alternatively, O'Bryant's allegations may be read as a claim that his Speedy Trial rights under section 3164 of the Speedy Trial Act were violated. Section 3164 provides that a person who is detained solely because he is awaiting a federal trial must be tried within ninety days. The excludable time delays set out in 3161(h) also apply to the ninety day period of section 3164. 18 U.S.C. § 3164(b). Initially we note that the proper redress for a violation of section 3164 is the release of a defendant, not the dismissal of an indictment. 18 U.S.C. § 3164(c); *see*

*United States v. Gaines*, 563 F.2d 1352, 1357 (9th Cir.1977).

■ O'Bryant advances alternative arguments regarding the applicable time frame relating to his detention pending federal trial. First, he contends that he was detained solely on federal charges after his initial federal hearing before a Maryland magistrate on May 15, 1983. O'Bryant claims that he could have met the state bond for his misdemeanor boating charges, but was unable to meet the $1,000,000 bond set by the federal magistrate. Thus, according to O'Bryant, the only thing standing between him and freedom was the federal bond. We disagree. O'Bryant did nothing to obtain his freedom: he never posted the state bond.[5] More important, the time from O'Bryant's Maryland arrest to the reversal of his state convictions on December 20, 1983, is excludable delay. 18 U.S.C. § 3161(h)(1) excludes delay resulting from other proceedings concerning a defendant. Section 3161(h)(1)(D) specifically excludes "delay resulting from *trial* with respect to other charges." (Emphasis added). Section 3161(h) does not specifically mention delays resulting from incarceration pending appellate proceedings as an excludable period. Excludable delay, however, is not limited solely to enumerated delays. 18 U.S.C. 3161(h)(1).[6] Accordingly, we conclude that incarceration pending appeal where a defendant has failed to post an appeal bond is excludable delay for purposes of section 3161. Hence, O'Bryant's contention that he was detained solely on

---

**4.** Section 3161(h)(1)(J) limits excludable delay attributable to proceedings under advisement to thirty days. Therefore, deferral of a decision on the suppression motion does not by itself exclude all of the time between the filing of the suppression motion and trial. *See United States v. Rodriquez-Franco*, 749 F.2d 1555, 1557 (11th Cir.1985).

**5.** Moreover, O'Bryant never demanded a trial on the charges underlying the federal detainer. Section 3161(j)(2) provides that a state prisoner detained on federal charges may demand trial on the pending charges. By its terms, § 3161(j) applies to prisoners serving terms of imprisonment. Thus, § 3161(j) was not available to O'Bryant until after his state conviction on August 17, 1983. Nonetheless, O'Bryant never re-

quested a trial pursuant to § 3161(j) even though the amount of his state bond was continued on appeal. As we discuss elsewhere, the time O'Bryant was in state custody pending a state trial is excludable delay under 18 U.S.C. § 3161(h)(1)(D).

**6.** *See, e.g., United States v. Rodriquez-Franco*, 749 F.2d 1555, 1558–59 (11th Cir.1985) (probation revocation proceedings qualify as "other proceedings" under § 3161(h)(1) tolling Speedy Trial Act clock); *United States v. Lopez-Espindola*, 632 F.2d 107, 110 (9th Cir.1980) (same); *United States v. Wedalowski*, 572 F.2d 69 (2d Cir.1978) (excluding delays attributable to procurement of scientific test results and preliminary examination).

federal charges from the period of March 1982 to December 20, 1983 is without merit.

We agree with O'Bryant's alternative method of calculation: that he was solely detained awaiting federal trial as of December 20, 1983. *See United States v. McLemore,* 447 F.Supp. 1229, 1233 n. 2 (D.C.Mich.1978). As of December 20, 1983, O'Bryant had been cleared of all Maryland charges and no state proceedings were pending against him. This finding, however, does not advance his argument that the federal indictment should have been dismissed. As previously noted, the proper relief for a section 3164 violation is release, not dismissal. Furthermore, from December 20, 1983 to trial, O'Bryant was not detained in excess of ninety days once properly excludable time has been subtracted. O'Bryant requested and received a continuance from March 15, 1983 to March 21, 1983. Consequently that period is excluded. Moreover, O'Bryant's motions made at and after the March 21 arraignment operated to exclude the remaining time to trial. Therefore, O'Bryant's claim under section 3164 of the Speedy Trial Act is meritless.

Although it is not clear whether O'Bryant claims that his pretrial incarceration violated the Interstate Agreement on Detainers, 18 U.S.C.App., application of that agreement to these facts need not detain us long.[7] 18 U.S.C.App. § 2 Art. III(a) provides that prisoners serving sentences in one state who have detainers lodged against them by a second state must be tried in the second state within 180 days after the prisoner files a written request for final disposition of the pending charges. *See United States v. Ricketson,* 498 F.2d 367, 372–73 (7th Cir.1974), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1975); *United States v. Dowl,* 394 F.Supp. 1250, 1255 (D.C.Minn.1975). Here, O'Bryant never demanded a trial on the charges pending in the Middle District

of Florida while he was incarcerated in Maryland. A prisoner cannot sit idly by and then claim that he was improperly detained under the Agreement.

Where a prosecutor from a second jurisdiction requests temporary custody of a prisoner for the purpose of a trial, that trial must commence within 120 days after the prisoner arrives in the second jurisdiction. 18 U.S.C.App. § 2 Art. IV(c). O'Bryant arrived in Florida on March 12, 1983. He was tried 112 days later on July 2, 1983. Thus, even without excluding delay properly attributable to reasonable continuances, O'Bryant was tried within the period set out in Article IV. *See United States v. Scheer,* 729 F.2d 164, 168 (2d Cir.1984).

## III. SUPPRESSION

O'Bryant's next contention is that the trial court erred in failing to suppress evidence obtained from the briefcase. O'Bryant's briefcase had been in a vehicle that was stolen on June 30, 1982. Three days later, Officer Crespi found the briefcase next to an overflowing trash dumpster. When Crespi opened the briefcase, he discovered three different passports with the same photograph and other documents which appeared to be false identification papers. The contents of the briefcase were subsequently examined by state and federal agents.

"The overwhelming weight of authority rejects the proposition that a reasonable expectation of privacy exists with respect to trash discarded outside the home and the curtilage thereof." *United States v. Thornton,* 746 F.2d 39, 49 & n. 11 (D.C.Cir. 1984) (citing federal appeals court cases accounting for binding precedent in all circuits). As Justice Harlan noted in *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring), for an expectation of privacy

---

**7.** The United States is a party to the Agreement. *United States v. Mauro,* 436 U.S. 340, 354, 98 S.Ct. 1834, 1844, 56 L.Ed.2d 329 (1978). Although the Agreement was enacted after the Speedy Trial Act, the two are not incompatible.

Where the two enactments have inconsistent time periods, the Court has held that the more stringent time period against the government will apply. *Id.* at 356 n. 24, 98 S.Ct. at 1845 n. 24.

to receive Fourth Amendment protection, it must be one "that society is prepared to recognize as 'reasonable.' " Thus the ultimate question put by *Katz* is "whether, if the particular form of surveillance practiced by the police is permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society." A. Ámsterdam, *Perspectives on the Fourth Amendment,* 58 Minn.L.Rev. 349, 403 (1974). We conclude that O'Bryant did not have a reasonable expectation of privacy in a briefcase that was discarded next to an overflowing trash bin on a busy city street.

That O'Bryant did not place the briefcase next to the trash bin does not alter our analysis. *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) presents an analogous situation. There, the Court upheld a warrantless investigation of a package by DEA agents who were alerted by a private freight carrier that its employees had observed a suspicious white powder inside a package. *Jacobsen* demonstrates that Fourth Amendment proscriptions on governmental search and seizure are not triggered when private third parties independently invade privacy and subsequently display their discovery to authorities. Although, unlike the instant case, the *Jacobsen* third party had legal possession of the defendant's property, *Jacobsen* focuses our analysis on the reasonableness of the police action, not the reasonableness of the third party's action. *Id.,* 104 S.Ct. at 1656 (quoting *Walter v. United States,* 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)).

At issue here is whether an officer who comes upon seemingly abandoned valuable property may reasonably inspect that property to determine the identity of the owner and inventory the property's contents for safekeeping. Officer Crespi's search and seizure fell within the bounds set out in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). *Opperman* inventory searches are justified on several grounds: deterrence of false claims

of loss made against police departments, safeguard against theft or careless handling of recovered articles, and protection of police from potentially dangerous material in articles held at the station house. *See Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 2609–10, 77 L.Ed.2d 65 (1983). We find that Crespi acted reasonably.

■ We reject O'Bryant's assertion that the search was overly intrusive after an initial identifying document was found. An *Opperman* inventory search permits a thorough search of property lawfully in police custody as long as that search is consistent with the police caretaking function. *Opperman,* 428 U.S. at 375–76 & n. 10, 96 S.Ct. at 3100 & n. 10, *United States v. Laing,* 708 F.2d 1568, 1570 (11th Cir.), *cert. denied,* 464 U.S. 896, 104 S.Ct. 246, 78 L.Ed.2d 235 (1983). Here, the circumstances clearly indicate that Officer Crespi opened the briefcase to determine its ownership, and not as "a pretext concealing an investigatory police motive." *Opperman, supra,* 428 U.S. at 376, 96 S.Ct. at 3100. Furthermore, the contents of the briefcase itself necessitated close inspection to identify the owner. The multiple pieces of identification with conflicting names attributed to the same photograph rendered property identification impossible without a more thorough investigation of the briefcase's contents.

■ We also reject O'Bryant's contention that the inventory search exception to the general prohibition against warrantless searches was violated because Crespi did not prepare a complete list of the briefcase's contents. "The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984). Therefore, failure to compile a complete written inventory of the briefcase's contents or notify the owner that his briefcase had been recovered does not, on these facts, enter into our analysis.

## IV. JURY INSTRUCTIONS

■ O'Bryant next asserts that the district court erred by refusing two proposed jury instructions. O'Bryant requested instructions (1) defining the term "fraudulent" and (2) setting out the common law rule that use of an assumed name is not an offense. The trial court found that O'Bryant's first jury instruction was beyond the elements of the offense and that the second instruction was unsupported by evidence that O'Bryant had ever intentionally assumed other names for legitimate business purposes.

O'Bryant correctly points out that there was some evidence that he had used assumed names for legitimate business purposes. David Halfacre testified that O'Bryant had worked in a boatyard and paid bills using the name Williams. O'Bryant is also correct that it is not *per se* illegal to use an assumed name. *See United States v. Wasman*, 641 F.2d 326, 327 & nn. 2 & 3 (5th Cir. Unit B 1981).[8] Nonetheless, we find that the district court did not err because both requested instructions were beyond the elements of 18 U.S.C. § 1542.[9]

■ Section 1542 proscribes "willfully and knowingly" making a false statement in a passport application. The crime is complete when one makes a statement one knows is untrue to procure a passport. *See Browder v. United States*, 312 U.S. 335, 337, 61 S.Ct. 599, 601, 85 L.Ed. 862 (1941); *United States v. Winn*, 577 F.2d 86, 91 (9th Cir.1978). Good or bad motives are irrelevant. *Browder*, 312 U.S. at 337–38, 61 S.Ct. 599, 601, 85 L.Ed. 862; *United States v. Washington*, 705 F.2d 489, 493–94 (D.C.Cir.1983).

Appellant's reliance on *Wasman* is misplaced. In *Wasman* evidence pertaining to the use of an alias was admitted because it suggested that the defendant had not made a false statement, not because the evidence negated the requisite intent of a section 1542 violation. *Wasman, supra* at 327 & n. 3. As in *Washington, supra* at 494, O'Bryant does not contest the falsity of his passport applications. He merely asserts that his conduct, while "eccentric," was not "criminal" because his "use of other names was not done for fraudulent or deceptive purposes." Appellant's brief at 20. Accordingly, the rejected instructions were properly excluded because they addressed the extraneous issue of motivation.

## V. JURY POLL

O'Bryant's final contention is that the court improperly polled the jury. After the verdict was announced, the trial judge asked each juror, "Was that your verdict in all respects?" O'Bryant argues that the judge should have asked each juror, "Is that your verdict in all respects?" Such an instruction would have enabled a juror uncomfortable with his or her verdict in the jury room to change the verdict in open court.

■ We find this argument more semantic than legal. Although the latter instruction is preferable to the former, the form of jury polling is a matter entrusted to the sound discretion of the trial judge. *United States v. Mangieri*, 694 F.2d 1270, 1282 (D.C.Cir.1982); *United States v. Lustig*, 555 F.2d 737, 746 (9th Cir.), *cert. denied*, 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977). Absent expression of uncertainty as to the verdict by one or more of

---

**8.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

**9.** 18 U.S.C. § 1542 provides as follows:

**False statement in application and use of passport**

Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or

Whoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

the jurors, no abuse of discretion is committed by refusing to poll the jury a second time. *Lustig, supra* at 746. Here, no re-polling of the jury was required where the trial judge noted that he had "detected no hint of hesitance on the part of any member of the jury which would cause me to question in any way the need for further polling." Hence, we reject O'Bryant's final allegation of error.

We AFFIRM the convictions.