**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

AIFANG YE,
*Defendant-Appellant*.

No. 12-10576

D.C. No.
1:12-cr-00009-
RVM-2

ORDER AND
AMENDED
OPINION

Appeal from the District Court
for the Northern Mariana Islands
Ramona V. Manglona, Chief District Judge, Presiding

Argued and Submitted
February 19, 2015—Honolulu, Hawaii

Filed July 10, 2015
Amended December 10, 2015

Before: Richard R. Clifton, N. Randy Smith,
and Michelle T. Friedland, Circuit Judges.

Order;
Opinion by Judge Friedland

# SUMMARY[*]

## Criminal Law

Affirming convictions relating to the provision of false information on a passport application in violation of 18 U.S.C. § 1542, the panel held that a violation of § 1542 does not require specific intent.

The panel held that a conviction under the first paragraph of § 1542 requires only that, in applying for a passport, the defendant made a statement that the defendant knew to be untrue. The panel therefore rejected the defendant's arguments about purported flaws in the jury instructions that depend on the notion that specific intent is required by § 1542.

The panel held that the defendant's argument that the government's failure to call certain translators as witnesses at trial violated her rights under the Confrontation Clause is foreclosed by precedent.

## COUNSEL

David G. Banes (argued), O'Connor Berman Dotts & Banes, Saipan, Commonwealth of the Northern Mariana Islands, for Defendant-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Ross K. Naughton (argued), Assistant United States Attorney, and Alicia A. G. Limtiaco, United States Attorney, United States Attorneys' Office, Saipan, Commonwealth of the Northern Mariana Islands, for Plaintiff-Appellee.

## ORDER

The opinion filed July 10, 2015, appearing at 792 F.3d 1164, is hereby amended as follows:

The language of footnote 2 is added to the opinion:

> Ye is correct that in *Bryan v. United States*, 524 U.S. 184 (1998), the Supreme Court interpreted "willfully" to mean "undertaken with a bad purpose," *id.* at 191, and "with knowledge that [the defendant's] conduct was unlawful," *id.* at 192 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)). At the same time, however, the Court acknowledged that "[t]he word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *Id.* at 191 (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)). Given this equivocation, we do not understand *Bryan* to have overruled *Browder*, which specifically defined willfully in the context of § 1542. Neither do we understand the Supreme Court's mention of § 1542 in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 60 (2007), to have overruled *Browder*. Although *Safeco*

instructed that "in the criminal law 'willfully' *typically* narrows the otherwise sufficient intent, making the government prove something extra," *id.* (emphasis added), "typically" does not mean always. The Supreme Court has instructed that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Because *Browder*'s interpretation of § 1542 directly applies here, that instruction controls.

With this amendment, the panel has unanimously voted to deny appellant's petition for rehearing and petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petitions for rehearing and rehearing en banc are **DENIED**. Further petitions for rehearing and rehearing en banc shall not be entertained.

**OPINION**

FRIEDLAND, Circuit Judge:

Following a jury trial, Aifang Ye appeals her convictions relating to the provision of false information on a passport application. She argues that the district court's jury instructions erroneously failed to condition her convictions on a finding that she intended to violate the passport laws. We hold that the crimes for which Ye was convicted are not specific intent crimes, so her challenges to the jury instructions fail. Ye's additional argument that the government's failure to call certain translators as witnesses at trial violated her rights under the Confrontation Clause is foreclosed by precedent. We therefore affirm.

## I. Background

Aifang Ye and her husband, Xigao Cheng, both Chinese citizens, traveled from China to Saipan in September 2011. Ye's tourist visa permitted her to stay until October 2011. Xigao returned to China in September, but Ye, who was pregnant with their second child, overstayed her visa. In February 2012, Ye gave birth to her daughter, Jessie, in Saipan. Jessie's place of birth makes her a U.S. citizen entitled to a U.S. passport.

Parents of a U.S. citizen child under age 16 may obtain a U.S. passport for the child if both parents apply in person at the passport office. Alternatively, the application may be executed by only one of the parents if that parent shows a notarized statement or affidavit from the absent parent consenting to the issuance of the passport. 22 C.F.R. § 51.28(a)(3)(i).

Ye and her husband wished to obtain a U.S. passport for Jessie but, because drawing attention to the birth of a second child might have created difficulties for them at home, Ye did not want to have her husband seek a notarized statement. On the advice of Kaiqi Lin, whom Ye had hired to provide translation and document preparation services, her husband instead gave his passport to his brother Zhenyan Cheng, who would be traveling to Saipan. Zhenyan then traveled to Saipan, bringing his brother's passport with him to Saipan.

Lin drove Ye and Zhenyan to the passport office in Saipan. Zhenyan presented the passport office employee with his brother's passport, without showing his own passport or a power of attorney from his brother. Ye signed the application as Jessie's mother and Zhenyan signed as Jessie's father, using his brother's name.

Unfortunately for Ye, the Department of Homeland Security ("DHS") had Lin under surveillance that day. After Ye, Zhenyan, and Lin left the passport office, a DHS agent approached Lin in his car and saw two Chinese passports on the passenger seat—Ye's and her husband's. Lin provided the passports to the DHS agent at his request. The agent confirmed that Zhenyan had not had his own passport with him at the passport office.

Zhenyan later was arrested and gave a statement to a DHS agent using the U.S. Citizenship and Immigration Services ("USCIS") "Language Line" for translation assistance. The next day, Ye voluntarily came to the DHS office and provided her own statement using the USCIS Language Line.

Ye then cooperated with the government in its investigation of Lin by placing a recorded phone call to

him.  Despite Ye's cooperation, both Ye and Zhenyan were indicted.  Zhenyan was charged with violating 18 U.S.C. § 1542, which prohibits providing false information in a passport application, and Ye was charged with aiding and abetting that violation.  Both were charged with conspiracy to violate § 1542.

Following a joint trial, the jury acquitted Zhenyan but convicted Ye of both counts.  Ye timely appealed her convictions.

## II. Discussion

### A. Specific Intent

The statute under which Ye was convicted, 18 U.S.C. § 1542, provides:

> Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or

> Whoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement-

> Shall be [subject to criminal liability].

Ye was convicted under the first paragraph of this statute.

Ye argues that the statute's use of "willfully and knowingly" makes providing a false statement in a passport application a specific intent crime–meaning that it requires the intentional violation of a known legal duty. Ye contends that the district court's instructions defining "willfully" and "knowingly" failed to reflect this requirement.

We review de novo whether jury instructions accurately described the elements of the charged crime. *United States v. Liu*, 731 F.3d 982, 987 (9th Cir. 2013). We hold that a violation of § 1542 does not require specific intent. A conviction under the first paragraph of § 1542 requires only that, in applying for a passport, the defendant made a statement that the defendant knew to be untrue.

The Supreme Court long ago established that the *second* paragraph of § 1542 does not require specific intent. In *Browder v. United States*, the Court defined "willfully and knowingly" in the second paragraph to mean "deliberately and with knowledge and not something which is merely careless or negligent or inadvertent." 312 U.S. 335, 341 (1941).[1] This definition does not require that the defendant knew that her action was unlawful.

Although *Browder* analyzed the second paragraph of § 1542 rather than the first, "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). This principle counsels us to apply the

---

[1] *Browder* interpreted a predecessor statute to 18 U.S.C. § 1542. *See* 312 U.S. at 335 n.1 (quoting 22 U.S.C. § 220 (repealed 1948)). The wording of the predecessor statute was identical in all relevant respects to that of § 1542.

Supreme Court's definition of "willfully and knowingly" in the second paragraph of § 1542 to the identical language in the first paragraph. Other circuits that have considered the issue agree that *Browder*'s definition applies to the first paragraph and that, therefore, no part of the statute has a specific intent requirement. *See United States v. George*, 386 F.3d 383, 389 (2d Cir. 2004) (Sotomayor, J.); *Liss v. United States*, 915 F.2d 287, 293 (7th Cir. 1990); *United States v. O'Bryant*, 775 F.2d 1528, 1535 (11th Cir. 1985).[2]

Notwithstanding *Browder*, Ye argues that our decision in *United States v. Winn*, 577 F.2d 86 (9th Cir. 1978),

---

[2] Ye is correct that in *Bryan v. United States*, 524 U.S. 184 (1998), the Supreme Court interpreted "willfully" to mean "undertaken with a bad purpose," *id*. at 191, and "with knowledge that [the defendant's] conduct was unlawful," *id*. at 192 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)). At the same time, however, the Court acknowledged that "[t]he word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *Id*. at 191 (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)). Given this equivocation, we do not understand *Bryan* to have overruled *Browder*, which specifically defined willfully in the context of § 1542. Neither do we understand the Supreme Court's mention of § 1542 in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 60 (2007), to have overruled *Browder*. Although *Safeco* instructed that "in the criminal law 'willfully' *typically* narrows the otherwise sufficient intent, making the government prove something extra," *id*. (emphasis added), "typically" does not mean always. The Supreme Court has instructed that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Because *Browder*'s interpretation of § 1542 directly applies here, that instruction controls.

established that the first paragraph of § 1542 creates a specific intent crime. The defendant in *Winn* had challenged his conviction under that paragraph on the ground that there was insufficient evidence to prove specific intent. *Id.* at 90. We affirmed because sufficient evidence supported the defendant's conviction. *Id.* at 91. In describing the jury instructions given at trial, we stated that the district court had "correctly instructed the jury that 'an act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say, with a purpose either to disobey or disregard the law.'" *Id.* Contrary to Ye's reading, *Winn* was solely a sufficiency-of-the-evidence case, so its approval of the "willfully" jury instruction is best understood as stating that the instruction had not improperly reduced the government's burden of proof. Given that there was sufficient evidence in *Winn* to support the jury's finding that the defendant had specific intent, there was no need for us to consider whether the statute actually required specific intent.[3]

More recently, and in a case in which the elements of § 1542 were in dispute, we followed *Browder* in interpreting the first paragraph of the statute. In *United States v. Suarez-Rosario*, we stated:

> "The gravamen of the offense . . . is the making of a false statement." *United States*

---

[3] Discussing our decision in *Winn*, then-Judge Sotomayor similarly explained: "[The appellant in] *Winn* challenged only the sufficiency of the evidence supporting his conviction . . . and not the jury instruction's accuracy. Therefore, the Ninth Circuit's statement that the trial court 'correctly instructed the jury,' for which no support was offered, was not necessary for the court to reach the issue presented on appeal." *George*, 386 F.3d at 396 n.14 (citation omitted).

*v. Cox*, 593 F.2d 46, 48 (6th Cir. 1979). Thus, the "crime is complete when one makes a statement one knows is untrue to procure a passport." *United States v. O'Bryant*, 775 F.2d 1528, 1535 (11th Cir. 1985). Knowing use of any false statement to secure a passport, including the use of a false name or birth date, constitutes a violation of § 1542. *Liss v. United States*, 915 F.2d 287, 293 (7th Cir. 1990). Therefore, under the terms of 18 U.S.C. § 1542, the government must prove that the defendant made a willful and knowing false statement in an application for a passport or made a willful and knowing use of a passport secured by a false statement.

237 F.3d 1164, 1167 (9th Cir. 2001) (alteration in original). This description did not include specific intent among the elements of the offense. Although the parties in *Suarez-Rosario* had not raised the issue of specific intent, it is notable that we relied on *Browder* and cases from three other circuits that had interpreted § 1542 as not including a specific intent requirement. *Id.* (citing *Browder*, 312 U.S. at 340; *Liss*, 915 F.2d at 293; *O'Bryant*, 775 F.2d at 1535; *Cox*, 593 F.2d at 48).

We now join our sister circuits and hold that, consistent with *Browder*, a conviction under the first paragraph of 18 U.S.C. § 1542 does not require specific intent. Because all of Ye's arguments about purported flaws in the jury instructions depend on the notion that specific intent is required by § 1542, her arguments fail.

**B. Confrontation Clause**

Prior to trial, Ye and Zhenyan objected that it would violate the Confrontation Clause of the Sixth Amendment to admit statements they had made to DHS unless the USCIS Language Line translators who assisted them were called to testify. After considering testimony and other evidence regarding the nature of USCIS's translation services, the district court overruled the objection. Ye argues on appeal that the district court erred by subsequently admitting the translated statements at trial.

We review alleged violations of the Confrontation Clause de novo. *United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014).

In *United States v. Nazemian*, 948 F.2d 522, 525–28 (9th Cir. 1991), we held that, as long as a translator acts only as a language conduit, the use of the translator does not implicate the Confrontation Clause. Ye argues that *Nazemian* is inconsistent with the Supreme Court's decisions in *Crawford v. Washington*, 541 U.S. 36 (2004), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). As Ye correctly concedes, however, we already have held that *Nazemian* remains binding circuit precedent because it is not clearly irreconcilable with *Crawford* and its progeny. *United States v. Orm Hieng*, 679 F.3d 1131, 1141 (9th Cir. 2012). As a three-judge panel, we are bound by *Orm Hieng* and *Nazemian*. *See Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc).

Ye alternatively argues that the district court misapplied *Nazemian* in admitting the translated statements here. Determining whether the translator was merely a language conduit under *Nazemian* requires analyzing four factors:

"(1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications and language skill, and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated." *United States v. Romo-Chavez*, 681 F.3d 955, 959 (9th Cir. 2012).

Ye contends that the first *Nazemian* factor weighs against treating the translators as language conduits because the translators were provided by the government through its on-demand telephonic translation service. This factor does weigh in Ye's favor, but we have held that this factor is "never dispositive." *Romo-Chavez*, 681 F.3d at 959. This factor would have more weight if the translators were active in directing the interview, *id.* at 959–60, but they were not.

Ye next argues that the second factor weighs in her favor because the translators were independent contractors who would have a motive to distort evidence in the government's favor in order to keep their jobs. Ye further contends that the use of the word "forged" in Zhenyan's original translated statement is in fact evidence of pro-government distortion because Zhenyan would not have used such a loaded word. But the record is unclear about whether some or all of the translators were independent contractors, and there is no way to know whether Zhenyan actually used the word "forged." The inconclusive nature of the evidence on this factor causes us to give it little weight.

The government's evidence on the third and fourth factors is compelling, and Ye does not argue otherwise. For the third factor, the government provided evidence that all of the translators had native fluency in Mandarin—the language spoken by both Ye and Zhenyan—and that all had

extensive professional translation training and experience. Additionally, during the interviews of Ye and Zhenyan, DHS agents checked the accuracy of the translation by asking the translators to have Ye and Zhenyan confirm line-by-line read-backs of what they had said. To test the accuracy of the translation, the DHS agents inserted intentional inaccuracies in the read-backs, which Ye and Zhenyan identified and corrected each time. This indicates that the translators' work was accurate. For the fourth factor, Ye's behavior subsequent to the interview was consistent with her translated statement. During the interview, Ye agreed to cooperate in the government's investigation of Lin, and she later followed through on that agreement by placing a recorded phone call to him. Therefore, both the third and fourth factors strongly favor the government.

On balance, these four factors favor treating the translators as language conduits. Thus, under *Nazemian*, Ye's Confrontation Clause rights were not violated when the government introduced translated statements from Ye and Zhenyan without calling the translators to testify.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** Ye's convictions.[4]

---

[4] We address Ye's remaining arguments in a concurrently filed memorandum disposition.