[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12338
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cr-60137-KMW-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARIA ERSHOVA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 3, 2019)

Before WILSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Daria Ershova appeals her convictions for four counts of making a false statement in a passport application, in violation of 18 U.S.C. § 1542. Ershova asserts the district court abused its discretion in denying her motion to dismiss the indictment because her action, as a notary, of signing a form necessary for a parent to apply for a passport for a minor under the age of 16 was not a "statement" within the meaning of § 1542. She also contends the district court erred in denying her motion for a judgment of acquittal for the same reason. After review, we affirm her convictions.

## I.  BACKGROUND

A grand jury indicted Ershova and two codefendants in a 15-count indictment. As relevant to this appeal, Ershova was indicted for making false statements in passport applications, in violation of 18 U.S.C. § 1542. Section 1542 provides, in pertinent part:

> Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws . . . [s]hall be fined [and/or imprisoned].

18 U.S.C. § 1542. Specifically, the indictment alleged in the substantive counts that Ershova:

> did willfully and knowingly make a false statement in an application for a passport with the intent to induce and secure the issuance of a passport under the authority of the United States for the use of

2

another, contrary to the laws regulating the issuance of passports and the rules prescribed pursuant to such laws, in that she represented that she had personally witnessed a non-applying parent sign the DS-3053 Statement of Consent, when in truth and in fact, and as she then and there well knew, she had not personally witnessed a non-applying parent sign the DS-3053 Statement of Consent in violation of Title 18, United States Code, Sections 1542 and 2.

In applying for a United States passport for a minor child where one parent is not available, a notarized form can be used as the Statement of Consent from the unavailable or non-applying parent. *See* 22 C.F.R. § 51.28(a)(3). The Government alleged that on some of the dates Ershova notarized fathers' signatures on the consent forms, the fathers had already returned to Russia, and on other forms, there was no record the fathers had lawfully entered the United States.

Ershova moved to dismiss the indictment. Relevant to this appeal, she argued there was no precedent in which a notary had been charged with violating § 1542. She contended a notarization was not a "statement" as used in § 1542, and that her conduct therefore fell outside the scope of the statute.

Ershova attached a copy of a blank Form DS-3053 to her motion. The instructions warn that false statements made "on passport applications, including affidavits or other supporting documents submitted therewith" are punishable under various statutes, including § 1542. The form itself has four sections for a parent to provide information and state they consent to the child's application for a U.S. passport. Following these fields, the form states: "Stop! You *must* sign this

3

form in front of a notary."  It then has a signature line saying, "I declare under penalty of perjury that all statements made in this supporting document are true and correct."  In the fifth section, titled "Statement of Consent Notarization," the form provides a line for the notary to sign and certify, among other things, that she had personally witnessed the parent sign the document and that the notary had personally viewed the parent's identification document.

Ershova also attached a copy of a blank Form DS-11.  In a section providing requirements for minors' passports, the form instructed that, when only one parent applies for the passport, that parent also had to submit the other parent's "notarized written statement or DS-3053 . . . . The notarized statement . . . *must* be signed and notarized on the same day . . . ."  The form also provided a warning:  "False statements made knowingly and willfully in passport applications, including affidavits or other documents submitted to support this application, are punishable by fine and/or imprisonment under U.S. law including . . . 18 U.S.C. 1542 . . . ."

The district court held a hearing on the motion to dismiss.  The court acknowledged that no case had squarely addressed the issue, but noted the form warned against making false statements.  The court stated it considered the form to be a "supporting document," but that it did not consider Ershova's argument to be an appropriate inquiry at the motion to dismiss stage.  The court stated the language of the form notified whoever was filling out the form or was involved in

4

the documentation in support of the passport application that a false statement could lead to punishment.  However, the court could not determine at the motion to dismiss stage whether Ershova was merely negligent as opposed to criminally liable.  The court found that, based on the indictment and the text and use of the Form DS-3053, a notarization was a "statement."  The court stated the form did not exempt notaries from its warning, and accordingly, denied the motion to dismiss.

The case then went to trial, and one of Ershova's codefendants, Vladimir Nevidomy, testified against Ershova.  Nevidomy testified that he was the co-owner of a company called Status Med assistance.  Status Med was a concierge business that helped Russian medical tourists seeking to give birth in the United States by, *inter alia*, preparing documents for patients' babies, and it did business under the name Sunny Medical Center.  After a client gave birth, the business would prepare documents, including applications for United States passports for the baby. Ershova was one of the managers for Sunny Medical Center, and she worked the front desk and helped prepare documents.  For a baby's passport application, both parents had to be present, but a father could send a notarized consent form.  If a father could not fill out and notarize the form himself, either the mother or a Status Med employee would forge his signature and then notarize the form.  Nevidomy, Ershova, and their codefendant Vera Muzyka first attempted to trace the father's signature, and then attempted practicing on multiple forms and picking the one that

5

looked best.  They had multiple conversations about forging the fathers' signatures, including how they needed to be careful because the government was closely checking consent forms.

On the second day of trial, Aura Arauz-Figueroa, a fraud prevention manager with the United States Department of State, testified that, for a passport application for a minor, a Form DS-3053 had to be signed in front of the notary, rather than before or after.  She further testified that a child is not entitled to a United States passport if the consent of a parent is falsely notarized.  Next, Caroline Schwab, the Notary Coordinator for the State of Florida, testified that the course Ershova completed to become a notary covered personal physical presence for notarization and that the document must be notarized on the same day the person signed it.  Narciso Fernandez, an enforcement officer with Customs and Border Protection, testified that Ershova signed and dated seven Form DS-3053s when the fathers were not in the United States, including two fathers who had not entered the United States at all by those dates.

The Government next called Evgenii Romaschenko, whose alleged signature as a parent consenting to his minor child's application for a United States passport had been notarized by Ershova.  Although Romaschenko previously had a sexual relationship with the birth mother, Olga Dynyak, Romaschenko had no knowledge of whether the baby she gave birth to was his, and had not accompanied Dynyak to

6

the United States for her to give birth to the child. Romaschenko had never met Ershova, and he never signed a consent form authorizing Dynyak to apply for a United States passport on behalf of the baby.

After calling other witnesses, the Government rested, and Ershova moved for judgment of acquittal. In relevant part, she renewed her argument that her notarization of the form was not a "statement" because a misstatement in the jurat was not the punishment intention of the statute. The court denied the judgment of acquittal, finding the instructions on Form DS-3053 warned that false statements made in the application would be punishable by law. The court also found a jury could reasonably determine Ershova filled out the forms based on the fact the forms contained her signature and notary stamp. Ershova did not present evidence. Ershova was convicted on four of the six counts of making a false statement in a passport application in violation of 18 U.S.C. § 1542. The jury acquitted Ershova of a conspiracy count and the two remaining counts of false statement in a passport application.

## II. DISCUSSION

*A. Motion to Dismiss*

In *United States v. Critzer*, we reversed the dismissal of an indictment after the district court concluded that, even taking the facts proffered by the government as constituting the elements of the offense as true, the defendant's actions did not

7

constitute a violation of federal law.  951 F.2d 306, 307-08 (11th Cir. 1992).  We noted "[t]here is no summary judgment procedure in criminal cases."  *Id.* at 307.  Rather, we held "[t]he sufficiency of a criminal indictment is determined from its face," and an indictment is sufficient if it follows the language of the statute and sets forth the essential elements of the crime.  *Id.* at 307-08.

The district court did not abuse its discretion in denying Ershova's motion to dismiss the indictment because the indictment tracked the language of the statute and charged the essential elements of the offense.  *See id.*; *United States v. Waldon*, 363 F.3d 1103, 1108 (11th Cir. 2004) (reviewing the denial of a motion to dismiss the indictment for an abuse of discretion).  Although Ershova argues her conduct did not constitute a violation of § 1542 in that her notarization was not a "statement," that argument is outside the scope of a motion to dismiss.  *See Critzer*, 951 F.2d at 307.  Rather, because her argument does not go to the sufficiency of the indictment but to the sufficiency of the evidence and what the Government was required to prove under the statute, we address it below in the context of her motion for a judgment of acquittal.  *See Yates v. United States*, 135 S. Ct. 1074, 1080-81 (holding, in the context of a motion for a judgment of acquittal, that a fish was not a "tangible object" within the meaning of 18 U.S.C. § 1519).

8

*B.  Motion for Judgment of Acquittal*

Section 1542 criminalizes "willfully and knowingly mak[ing] any false statement in an application for passport [to procure a passport], either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws."  18 U.S.C. § 1542.  The false statement need not be material.  *United States v. Ramos*, 725 F.2d 1322, 1323 (11th Cir. 1984).  "[A]ny false statement is sufficient" if it is made "with the intent to induce or secure . . . a passport."  *Id.* at 1323-24 (quotations omitted) (alteration in original).  "The crime is complete when one makes a statement one knows is untrue to procure a passport."  *United States v. O'Bryant*, 775 F.2d 1528, 1535 (11th Cir. 1985).  "Good or bad motives are irrelevant." *Id.*

Similarly, "[a] person providing false information as part of a passport application, whether contemporaneously with the form or at any other time, is subject to prosecution under applicable Federal criminal statutes."  22 C.F.R. § 51.20(b).  Regulations define "passport application" as "the application form for a United States passport . . . and all documents, photographs, and statements submitted with the form or thereafter in support of the application."  *Id.* § 51.1. Where only one parent seeks to apply for a U.S. passport for a child under the age of 16, that parent may do so only if she provides either (1) evidence that she is the sole parent or has sole custody of the child; or (2) "[a] notarized written statement

9

or affidavit from the non-applying parent . . . consenting to the issuance of the passport." *Id.* § 51.28(a)(3).

The district court did not err in denying the motion for judgment of acquittal. *United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006) (reviewing the denial of a motion for judgment of acquittal *de novo*).  First, to the extent Ershova argues that § 1542 applies only to applicants or affiants, the statute does not contain any such limiting language.  Rather, the statute provides it applies to "[w]hoever" makes a false statement.  *See* 18 U.S.C. § 1542.  Further, to the extent Ershova argues that Form DS-3053 was not part of the "passport application," the passport application regulations state the passport application includes supporting documents, *see* 22 C.F.R. § 51.1, and the form has to be submitted when one parent is applying for a passport for a minor child, *see id.* § 51.28(a)(3).  Accordingly, Form DS-3053 is part of the "passport application."

Ershova argues her notarization was not a "statement."  When interpreting a statute, we assume that Congress used words as they are ordinarily understood, and we construe the statute so that each provision is given full effect.  *See United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995).  The plain meaning controls unless the statute "is ambiguous or leads to absurd results."  *Id.*  "Statement"  is defined as "[a] verbal assertion or non-verbal conduct intended as an assertion," and it defines "false statement" as "[a]n untrue statement knowingly made with the intent

10

to mislead." *Statement, False Statement*, Black's Law Dictionary (11th ed. 2019). An "assertion," in turn, is defined as "a person's speaking, writing, acting, or failing to act with the intent of expressing a fact or opinion; the act or an instance of engaging incommunicative behavior." *Assertion*, Black's Law Dictionary (11th ed. 2019).

Looking at the language used in Form DS-3053, Ershova's signature was her certification of various facts, including that she witnessed the fathers sign the form. Because, by signing the document, she intended to express the facts enumerated in the form, we conclude her signature constitutes a "statement" within the ordinary meaning of the term.

Ershova asserts her statement was not "contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws." First, by making a false statement in a passport application, Ershova's actions were directly contrary to 22 C.F.R. § 51.20, which prohibits making false statements in an application. Second, by falsely notarizing consent forms, Ershova induced the issuance of passports where the applications did not comply with 22 C.F.R. § 51.28(a)(3). Consequently, her notarization of the consent forms was contrary to the laws and regulations concerning the issuance of passports.

Because, by notarizing the consent forms, Ershova falsely asserted she had witnessed the fathers sign them (in violation of one federal regulation) in order to

11

induce the issuance of a passport even though the application did not meet the requirements of another federal regulation, her conduct fell within § 1542. The fact that other statutes also prohibited Ershova's conduct does not create ambiguity because § 1542 clearly defined the prohibited conduct and the punishments for violating the statute. *See United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) (stating two statutes may validly provide different punishments for identical conduct so long as they clearly define the prohibited conduct and the punishments authorized, and where an act violates more than one criminal statute, the government has the discretion to prosecute under either so long as it does not discriminate against a class of defendants). Further, because the statute is unambiguous as to its prohibition on Ershova's conduct, this Court need not apply the rule of lenity. *See United States v. Trout*, 68 F.3d 1276, 1280 (11th Cir. 1995) (explaining where a criminal statute is ambiguous as to whether it applies to certain conduct, the rule of lenity requires it be construed narrowly in favor of the defendant).

As to the parties' arguments regarding how Form DS-3053 is structured, because the text of § 1542 unambiguously applied to Ershova's conduct, this Court's inquiry stops with the statutory text. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). And although notaries have not

12

previously been prosecuted under § 1542, the statute, standing alone, was sufficiently clear to give Ershova fair warning that falsely certifying she had witnessed the fathers sign the forms was criminal, so due process does not prohibit her prosecution under that statute. *See United States v. Lanier*, 520 U.S. 259, 267 (1997) (explaining "the touchstone [for fair warning] is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal").

For these reasons, the district court did not err in denying Ershova's motion for judgment of acquittal and we affirm her convictions.

**AFFIRMED.**

13